809 So.2d 1210 (2002)
Philip BAPTISTE
v.
Eddie SHULER, d/b/a Kamar Publishing Company, Tek Music Publishing.
No. 01-1127.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
*1211 Daniel Emile Stretcher, Marcantel, Marcantel, Wall & Pfeiffer, Jennings, LA, for Philip Baptiste.
Robert Michael McHale, Attorney at Law, Lake Charles, LA, for Eddie Shuler and Tek Music Publishing.
Court composed of ULYSSES GENE THIBODEAUX, MARC T. AMY and ELIZABETH A. PICKETT, Judges.
AMY, Judge.
The plaintiff filed suit, alleging that a publishing contract entered into in 1959 should be declared absolutely null due to what he contends was a forged signature. The defendant filed an exception of prescription, which was referred to the merits. The trial court ultimately granted the exception of prescription concluding that the plaintiff sought a declaration of relative nullity rather than an absolute nullity. The plaintiff appeals. For the following reasons, we affirm.

Factual and Procedural Background
The plaintiff, Philip Baptiste, alleges that in 1957, he wrote and arranged the song "Sea of Love." He also applied for a copyright of the composition in that year. Then a Lake Charles resident, Mr. Baptiste met and signed both a management contract and recording contract with George Khoury in 1959, an area record store owner. According to trial testimony, the song could not be played commercially until it had been published. Mr. Khoury arranged for Mr. Baptiste to sign a publishing contract with Eddie Shuler, then the owner of a recording studio and part owner of Kamar Publishing Company. The publishing contract is dated February 3, 1959. According to the contract, Mr. Shuler, as publisher would receive fifty percent of the publishing royalties. The remaining fifty percent was payable to the writers. Mr. Baptiste contends that, at the time he signed the contract, he was listed as the only writer. However, the contract introduced into evidence and now at issue lists Mr. Khoury as a co-writer. The song was recorded at Mr. Shuler's recording studio with musicians and backup vocals. Mr. Baptiste contends that he alone wrote and composed the song without assistance from Mr. Khoury or the other musicians. The song has enjoyed success in the decades following the 1959 recording.
*1212 Mr. Baptiste now questions the publishing contract signed with Mr. Shuler. He contends that when the record was produced, he became aware that George Khoury was listed on the record as a co-writer and that, when he questioned Mr. Shuler about the labeling, he was told that the instruction to include a co-writer came from Mr. Khoury. Mr. Baptiste explained that Mr. Khoury reported to him that it was his way of doing business. Mr. Baptiste reported at trial that he did not receive a copy of the publishing contract with Mr. Shuler until some time later.[1] When he obtained a copy of the contract, he and Mr. Khoury were listed as co-writers. Mr. Baptiste argues that, when he signed the contract, Mr. Khoury was not listed and that it was altered after he signed the document. Due to this alteration, he contends that, over the past decades, he has received only twenty-five percent of the publishing royalties, instead of the fifty percent to which he claims entitlement.
Although various rights related to the song have been the subject of other suits, including one filed by the plaintiff against Mr. Khoury in 1961, Mr. Shuler was not named as a defendant in any of Mr. Baptiste's prior litigation. Mr. Baptiste contends that, although a number of attorneys were associated with the matter over the past several decades, suit was never filed against Mr. Shuler. The plaintiff, representing himself, filed the suit on February 17, 1998. Eddie Shuler, d/b/a Kamar Music Publishing and Tek Music Publishing, was named as a defendant. In the petition, the plaintiff alleged that Mr. Shuler permitted Mr. Khoury "access to the contract, in which Khoury fraudulently signed his [] name under the plaintiff claiming writer's royalties to the composition and thereby taking credit []as a co-author, when in fact, Khoury is not and never has been a co-writer." In January 1999, the plaintiff, with assistance of counsel, amended the petition, making allegations regarding the licensing of other works and asking the court to declare the "Kamar Publishing contract dated February 3, 1959, an absolute nullity based upon forged signatures found on the document which were placed therein through the fraud of Eddie Shuler."
In February 1999, the defendant filed an exception of prescription pointing out that in his deposition, Mr. Baptiste "stated that the only cause of action he would have against Eddie Schuler d/b/a Kamar Publishing Company and Tek Music Publishing occurred in either 1959 or 1960." Thus, according to the exception, "the cause of action herein stated occurred more than one year prior to the commencement of this action and is therefore prescribed by the prescription of one year. However, if this transaction is determined to be a contract, the same is also prescribed by the prescription of ten years." The plaintiff argued that the matter could not be viewed as one subject to prescription because he was seeking a declaration that the agreement was absolutely null. The exception was referred to the merits.
At the hearing on the matter, the trial court was presented with evidence including the contract in question and testimony from both the plaintiff and Mr. Shuler. Ultimately, the trial court found that the *1213 matter had prescribed, concluding that the plaintiff was seeking a declaration that the contract was a relative nullity, not an absolute nullity and, therefore, subject to a five-year prescriptive period.
The plaintiff appeals, presenting the following issues for review:
1. Whether a publishing contract which has been forged or materially altered is an absolute nullity such that an action to declare the publishing contract an absolute nullity is not susceptible to prescription.
2. Whether an action to have a forged or materially altered publishing contract declared an absolute nullity can be decided on an exception of prescription without reaching a decision on the merits of the claim that the contract was forged and materially altered.

Discussion

Absolute or Relative Nullity
In his brief, the plaintiff questions the result reached by the trial court. In particular, he argues that the trial court erred in concluding that he was seeking a declaration that the contract was a relative nullity and, therefore, subject to a five-year period of prescription. The plaintiff argues that, instead, his petition and in particular, his first supplemental and amending petition clearly sought a rescission of the contract due to the alleged alteration. Accordingly, he contends that he was seeking a declaration that the contract was absolutely null, an action not susceptible of prescription.
The defendant argues that Mr. Baptiste does not seek a declaration that the contract is absolutely null, which would require that the contract be treated as if it never existed. Rather, the defendant argues, the plaintiff is essentially asking the court to excise that portion of the contract bearing Mr. Khoury's name and entitling him to a portion of the royalties associated with the contract. As evidence of the intent of the plaintiff's petition, the defendant points to the following passage from the plaintiff's hearing testimony:
Q Okay. But what you're saying is you want that contract to be invalid?
A That's right.
Q And if that contract's invalid, then the song would have never been recorded, correct?
A That's right.
Q And you would have never received a dime off this song; is that right?
A That's right.
Q And that's what you want to go back to?
A Well, I wantI want theI want the songI want the "Sea of Love" publishing contract declared void, absolutely null, and I want all of the royalties that was paid to anyone else but me.

Q But if the contract's declared null, it's like it never existed; is that your understanding?
A That's right.
Q And if it never existed, there never would have been any royalties; is that right?
A That's right. Well, I couldn'tI couldn't say if it never would have existed would there have been any royalties because probably I could have went [sic] with somebody else that would have treated me right and it might have been a better thing than what Ithe deal that I did get.

*1214 Q But what you're asking this Court to do is declare that contract absolutely null and put you back in the situation that you would have been before this contract?
A Correct.
(Emphasis added.) Thus, the defendant contends that, although the plaintiff may seek an absolute nullity of the contract in a superficial sense, the remedy sought is excision of that portion he finds offensive.
The Louisiana Civil Code offers the following guidance as to the nullity, including the difference between absolute nullity of contracts and relative nullity of contracts:
Art.2029. Nullity of contracts
A contract is null when the requirements for its formation have not been met.
Art.2030. Absolute nullity of contracts
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.
Art.2031. Relative nullity of contracts
A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A contract that is only relatively null may be confirmed.
Relative nullity may be invoked only by those persons for whose interest the ground for nullity was established, and may not be declared by the court on its own initiative.
As for the prescriptive period related to actions for absolutely or relatively null contracts, Article 2032 provides:
Art.2032. Prescription of action
Action for annulment of an absolutely null contract does not prescribe.
Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, or in the case of incapacity or duress, or was discovered, as in the case of error or fraud.
Nullity may be raised at any time as a defense against an action on the contract, even after the action for annulment has prescribed.
In reasons for ruling, the trial court explained its determination that the plaintiff did not, in fact, seek a declaration that the contract is an absolute nullity:
Well, it's obvious to me from the relief that's been sought in this case that the plaintiff is seeking only a partial rescission of the contract at issue here. He's not seeking a total rescission of the contract because he has enjoyed the benefits of that contract and wishes to continue to receive the benefits of that contract.
He's asking for a partial rescission of the contract inasmuch as Mr. Khoury's name is listed as the co-writer. So, I view this as seeking a relative nullity and not an absolute nullity.
After making this determination, the trial court continued its reasons for ruling, explaining that since the plaintiff was seeking a declaration of relative nullity, the matter was subject to the five-year prescriptive *1215 period set forth in Article 2032. The court explained:
I'm handling the issue of prescription first here. Credibility of these two parties is not an issue when it comes to prescription. I certainly think that Mr. Baptiste made a very credible witness. I am not making any derogatory comments on his credibility as a witness, but credibility has nothing to do with deciding the issue of prescription. It has never been recognized as a defense to the Exception of Prescription that "I brought it to my lawyer, and my lawyer didn't do it timely."
That's not a defense to the exception. It does supply a different cause of action against the lawyer, perhaps, for malpractice, but it certainly does not constitute a defense to the Exception of Prescription.
The only problem complained of with this contract, according to Mr. Baptiste, is the inclusion of Mr. Khoury's name as a co-writer, and I certainly understand his complaints in that regard; however, he knew of the alleged forgery well beyond five years prior to the filing of this suit.
Forgery has an element of an intent to defraud, and that is a necessary part of the offense of forgery. So, this is, in my opinion, an issue involving relative nullity and therefore there would have been a five-year prescriptive period, and I therefore maintain the Exception of Prescription, and I find that that renders the Motion for Directed Verdict moot.
Again, the plaintiff argues that he never sought a relative nullity, but instead, points to his first supplemental and amending petition where his prayer for relief asks for, among other things, a declaration that "Kamar Publishing contract dated February 3, 1959, an absolute nullity based upon forged signatures found on the document which were placed therein through the fraud of Eddie Shuler." Although we are aware of the plain statement contained in the plaintiff's petition, we find no error in the trial court's view of the pleading as one seeking excision of the portion offensive to the plaintiff.
The contract at issue was entered into on February 3, 1959. According to the plaintiff, shortly thereafter, he became aware of the co-writer credit given to Mr. Khoury and his signature on the contract as co-writer. Over the next several decades, Mr. Baptiste enjoyed the benefits of the contract, one of which was the ability for the recording to receive airplay. According to testimony at trial, airplay of the recording would not have been permitted without a publishing contract. To now argue that he seeks to treat that contract as if it never existed is, not only an impossibility, but also ignores the substance of his statements at the hearing. While Mr. Baptiste may state that he seeks a declaration that the contract is absolutely null, his further statements clearly indicate that he envisions only repayment of those royalties that have been paid to Mr. Khoury over the past several decades. Despite this desire and despite his knowledge of the alleged alteration of the contract, he did not bring suit until 1998. During the period between knowledge of any alteration and the filing of suit, royalties according to the terms of the contract, have been paid.
According to La.Civ.Code art.2031, a contract may be relatively null if "it violates a rule intended for the protection of private parties, as when a party ... did not give free consent at the time the contract *1216 was made." In this instance, Mr. Baptiste's expressed displeasure indicates that, assuming his allegations are true, he did not give free consent to the portion of the contract he now contests. Accordingly, the trial court was not in error to find that, while the plaintiff may have sought a declaration of relative nullity, he did not do so according to the applicable five-year prescriptive period. Suit was filed well after "five years from the time the ground for nullity ... was discovered, as in the case of error or fraud." La.Civ.Code art. 2032.[2]

Reaching the Merits
The plaintiff also argues that the trial court erred in considering his assertion that the contract was forged or materially altered, but resolving the matter on the exception of prescription rather than reaching the merits of whether the contract was, in fact, forged or altered. In his brief to this court, the plaintiff notes the trial court's observation in reasons for ruling that the plaintiff was a credible witness and speculates that "[t]herefore the Trial Court must have believed his testimony that the contract was forged and materially altered." According to the plaintiff, "[i]f the contract was forged and materially altered, the action to declare it an absolute nullity never prescribes."
Again, the trial court determined that the plaintiff did not seek an annulment of the entirety of the contract, merely a determination that part of the contract should be excised. Because any action in this regard had prescribed, an ultimate determination as to whether the contract had been altered was unnecessary. No error is found in the trial court's refusal to make ultimate determinations of fact on the merits. This argument lacks merit.

DECREE
For the foregoing reasons, the judgment of the trial court granting the exception of prescription is affirmed. All costs of this action are assigned to the plaintiff, Philip Baptiste.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.
THIBODEAUX, J., dissenting.
The result of the majority's conclusion is that, notwithstanding the possible presence of fraud and material alteration, one's claim for the dissolution of an allegedly fraudulent contract is extinguished if the claimant has benefitted from the contract. It talismanically transforms a potential absolute nullity into a relative nullity. The effect is to promote fraudulent conduct with impunity if some benefit inures to the party contesting the forgery and material alteration.
In my view, the trial court should have permitted a full trial to determine the existence of fraud. If the evidence at the conclusion of the trial justified such a finding, then the plaintiff's action would not be susceptible to prescription and the issue of a relative nullity becomes irrelevant. The trial court should have allowed a full exploration of the plaintiff's request; to vitiate the February 3, 1959 contract and declare it an absolute nullity.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] The date by which Mr. Baptiste received a copy of the contract does not appear to be firmly established in the record. In the deposition attached to the defendant's exception of prescription, Mr. Baptiste contends he received a copy in 1959 or 1960. At trial, however, he stated he received a copy in the 1970s.
[2] Although not referenced by the trial court, La.Civ.Code art.2031 indicates that "[a] contract that is only relatively null may be confirmed."